In the Matter of the Dissolution of PEERLESS SALES CORP. and Other Corporations. BURNS JACKSON MILLER SUMMIT & JACOBY, Appellant; ARTHUR RICE et al., Respondents.

Second Department, June 25, 1979

APPEARANCES OF COUNSEL

*Lord Day & Lord (Eugene F. Bannigan* and *Stephen J. Crimmins* of counsel), for appellant.

*Eaton, Van Winkle, Greenspoon & Grutman (Samuel N. Greenspoon* of counsel), for respondents.

### OPINION OF THE COURT

Mangano, J.

Arthur and Louise Rice and Irving and Beatrice Jaffe formed six corporations known as Rice Aircraft, Rice Rivets, Genelco Industries, Peerless Sales, Dependable Fastener and Elmont Metal.

It was agreed sometime prior to November, 1972 that the stock of each of the six corporations would be equally divided between the Rices and Jaffes, each owning 50%. They also agreed that the Rices would manage Rice Aircraft, Rice Rivets and Genelco Industries and that the Jaffes would manage Peerless, Dependable and Elmont Metal.

This arrangement continued until 1972 when difficulties developed between the parties, resulting in the commencement of a proceeding for dissolution of Peerless, Dependable and Elmont by Arthur Rice. The dissolution was ordered by a judgment of the Supreme Court dated November 14, 1975, by which Henry Schober was appointed permanent receiver of the corporations in question. The Rices and the Jaffes, to avoid the dire effects of receivership, entered into a stipulation agreeing to submit the matter to arbitration in an effort to prevent the receiver from obtaining control of the assets of the corporations. They agreed that Mr. Schober should act as arbitrator and that the arbitration would involve all six corporations, so that the arbitrator could make a valid determination as to their respective interests. The stipulation was executed by the parties with the approval of the Attorney-General and was submitted to the Supreme Court for approval. Mr. Justice Gibbons, on February 19, 1976, approved the stipulation, stayed the dissolution, directed that arbitration proceed, and further provided that the arbitrator's decision *may* be reduced to judgment by either party.

Mr. Schober conducted a hearing and on May 18, 1978 made an award in excess of $20 million in assets to the Rices.

After the arbitration proceeding, Burns Jackson Miller Summit & Jacoby (hereinafter referred to as Burns Jackson),

the attorneys representing the Rices, sought to collect a fee based on a retainer agreement which is alleged to provide as follows: "If Burns Jackson were successful in separating and achieving for the Rices exclusive control over assets * * * having a value in excess of $1.5 million, Burns Jackson would have as its compensation, in addition to its fee based on time charges, a fair and equitable bonus to reflect its greater accomplishment in the matter."

Burns Jackson, to date, has received approximately $58,500 as its fee and seeks an additional sum as a fair and equitable bonus. However, after the final arbitration session but before the dates for submitting briefs, the firm of Fink, Weinberger, Fredman & Charney was substituted by the Rices for Burns Jackson.

After the arbitrator had rendered his award, Burns Jackson commenced the present proceeding which was dismissed by Mr. Justice OPPIDO in December of 1978. The court held that: "arbitration is no longer a special proceeding until the first application is made to the court. There is no attorney's charging lien for services rendered prior to the first application to the Court seeking affirmative relief. Burns Jackson does not claim to have performed any services for petitioner, Rice, in connection with the confirmation of the arbitrator's determination or subsequent thereto in connection with the entry of judgment. Therefore, they do not have a lien enforceable under Section 475 of the Judiciary Law." The dismissal was without prejudice to the commencement of an action to recover attorney's fees.

Section 475 of the Judiciary Law provides that an attorney has a lien upon his client's cause of action and upon the proceeds thereof, for services rendered from the commencement of: "an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim". Arbitration was once classified as a "special proceeding" (Civ Prac Act, § 1459). However, the Legislature, in enacting CPLR 7502, omitted any such reference in the interest of avoiding the formality of a judicial proceeding until the first application is made to a court (Spinello v Spinello, 70 Misc 2d 521; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7502.05).

Nevertheless, it is petitioner's contention that it is entitled to an attorney's charging lien for services rendered during the

arbitration, since the arbitration was intertwined and actually part of the corporate dissolution proceedings.

Petitioner admits that no lien would attach to a contractually derived arbitration as this would not fall within section 475 of the Judiciary Law. However, it contends that when services are rendered in an arbitration which is *incidental to* a judicial proceeding, a charging lien would attach because the services so rendered would merely be a logical extension of the judicial proceeding.

Whether this arbitration was a separate matter or was incidental to the prior proceeding requires an examination of the stipulation. To expeditiously dissolve these corporations, the parties stipulated: "Both parties have now agreed that their interests, individually and as stockholders, will best be protected by an equal division of the assets *in all corporations* to be determined by the submission of this question to binding arbitration." (Emphasis supplied.) The stipulation further provided that during arbitration, "all proceedings in the above-mentioned dissolution proceeding shall be stayed". The arbitrator's decision *"may be reduced to judgment"* by either party (emphasis supplied). The judgment was to be "final and absolute and there shall be no appeal therefrom to the Appellate Division * * * or to any other tribunal".

The order entered by Special Term was based on that stipulation and reiterated that the award of the arbitrator "shall be final, absolute and binding" upon all the parties and "shall not be modified, vacated or appealed from except on the grounds of fraud or patent error". Pending the arbitrator's award, the judgment of November 14 was stayed. Finally, and significantly, upon the award of the arbitrator and the concomitant division and distribution of the assets of the corporations, an application *could* be made to the court by any of the parties for an order vacating in its entirety the judgment of November 14.

I find that the parties had removed this dispute from the judicial process and devised their own system for its settlement. The court-ordered dissolution appointed a receiver who would dissolve the corporations according to a judicial formula. The parties thereafter decided "to chart their own procedural course" to dissolve not only the three corporations which were the subject of the initial action for dissolution, but to expand it to include the three additional corporations. The procedure they designed was a complete, final, binding, abso-

lute and nonappealable arbitration between the parties so that they could finally resolve their differences. The arbitrator's decision was to be so completely pre-emptive that the parties *could* apply for a court order vacating the earlier judgment. Special Term recognized and approved this independent arbitral procedure which would solve this dispute apart from the judicial process.

The arbitration in this case was not a part of a court proceeding and the services rendered by petitioner therein do not fall within the requirements of section 475 of the Judiciary Law. A charging lien did not attach and petitioner's remedy lies in a plenary suit for compensation under its agreement with the Rices.

Accordingly, the order appealed from should be affirmed.

HOPKINS, J. P. (dissenting). I vote to reverse the order and to grant the petition to enforce an attorney's lien.

The essence of the question before us is whether the stipulation entered into subsequent to the judgment in the action for the dissolution of the corporations ended the jurisdiction of the court in the action. The judgment granted the dissolution of the corporations and appointed a receiver. The judgment was subject to the continuing jurisdiction of the court (see *Matter of Gordon & Weiss,* 32 AD2d 279; *Matter of Smith [Guibor],* 47 AD2d 875).

By the stipulation, the parties submitted the determination of their interests to arbitration. The stipulation provided that "all proceedings in the above-mentioned dissolution proceeding shall be stayed pending the final determination of arbitration". It further provided that the arbitrator's determination "may be reduced to judgment and entered in the Supreme Court of Nassau County". Moreover, it provided that the determination was final and subject to no appeal, "except on the ground of fraud or patent error."

By its terms the stipulation did not end the jurisdiction of the court in the action. Though it prescribed the method of determining the interests of the parties, clearly the determination of the arbitrator would have to be effectuated by the court through the enforcement of the judgment to be entered, in the event that the determination was balked by one or more of the parties. Hence, the stipulation contemplated the continuation of the jurisdiction of the court in the pending action. It is noteworthy that the stipulation did not discon-

tinue the action, but recognized that it continued, as the stipulation provided that further proceedings in the action were stayed pending the determination of the arbitrator.

As the action remained in existence, the attorney's lien under the statute remained in existence. (See Judiciary Law, § 475.)

SHAPIRO and MARTUSCELLO, JJ., concur with MANGANO, J.; HOPKINS, J. P., dissents and votes to reverse the order and grant the petition, with an opinion, in which GULOTTA, J., concurs.

Order of the Supreme Court, Nassau County, dated December 17, 1978, affirmed, with $50 costs and disbursements.